UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| CONNIE SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-10-83 |
| | § | |
| DETAR HOSPITAL LLC, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Plaintiff Connie Smith's ("Smith") Opposed Motion to Compel Discovery Responses from Defendants (Dkt. No. 15), to which Defendants DeTar Hospital LLC, Victoria of Texas, L.P. ("DeTar"), William Blanchard ("Blanchard"), George Parsley ("Parsley"), Donald Hagan ("Hagan"), and Laurence Bludau ("Bludau") (collectively "Defendants") have responded (Dkt. No. 22), and Smith has replied (Dkt. No. 25). Having considered the motion, response, reply, record, and applicable law, the Court finds that Smith's motion should be **GRANTED** in part and **DENIED** in part.

**I. Background**

According to the facts as set forth in Smith's Second Amended Complaint (Dkt. No. 20), Defendants fired Smith shortly after she filed a sexual harassment complaint against her supervisor, Bludau, and just two business days after she became protected by the FMLA as a result of her mother's serious health condition, terminal pancreatic cancer. Specifically, on April 19, 2010, even though all the Defendants knew that Smith had left work that morning to care for her dying mother during a medical emergency, they instead falsely accused her of "job abandonment" and proceeded to fire her on that false and defamatory basis. According to Smith, their real reason was retaliation for her sexual harassment complaint, in violation of Title VII of

the Civil Rights Act of 1964 and the Family and Medical Leave Act (FMLA). Accordingly, Smith sued DeTar under these laws, and also sued all the individual Defendants under the FMLA and for defamation under Texas common law.

On December 22, 2010, Smith served the following discovery requests on Defendants: Plaintiff's First Set of Interrogatories and First Request for Production of Documents to Defendant Laurence Bludau; Plaintiff's First Set of Interrogatories and First Request for Production of Documents to Defendant George Parsley; Plaintiff's First Set of Interrogatories and First Request for Production of Documents to Defendant William Blanchard; Plaintiff's First Set of Interrogatories and First Request for Production of Documents to Defendant Donald Hagan; and Plaintiff's First Set of Interrogatories and First Request for Production of Documents to Defendants DeTar Hospital LLC, Victoria of Texas, L.P., and DeTar Healthcare System.

Because the requests were served three days before Christmas and were extensive and required the coordination of several people to respond, Defendants requested a three-week extension of time to respond, which Smith granted. On February 14, 2011, each of the Defendants served responses to Smith's discovery requests. Defendants claim that their responses were substantive and their objections limited. Defendants also produced responsive documents and supplemented their production several times thereafter, ultimately producing 10,592 documents.

Two days after Defendants served their responses, Smith's counsel sent an e-mail to Defendants' counsel raising issues with their responses to discovery pertaining to: (1) the personnel files of the individual Defendants; (2) other complaints of sexual harassment at DeTar, and DeTar's response to them; (3) evidence regarding other employees who, like Smith, left work for less than a day and how they were treated; and (4) the individual Defendants' net worth. Defendants' counsel thereafter agreed to provide the following: (1) net worth information for the

2

corporate Defendants; (2) a supplemental discovery response confirming that DeTar was not aware of any employee who was terminated for job abandonment because the employee left work for less than two hours; and (3) information from the individual Defendants' personnel files pertaining to their references and background checks, and confirming that there were no disciplinary documents for any of the individual Defendants indicating warnings or misconduct.

Smith argues that Defendants' have still failed to fully respond to her discovery requests and now moves the Court to compel Defendants to provide the requested information.

## II. Legal Standard

As the Fifth Circuit has repeatedly instructed, "'[a] district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse.'" *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001) (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000)). The party posing discovery may move to compel the disclosure of any materials requested so long as such discovery is relevant and otherwise discoverable. *See* FED. R. CIV. P. 37; *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006) ("[Rule] 37(a) [(3)(B)(iii) and (iv)] empowers the court to compel the production of documents . . . upon motion by the party seeking discovery."). Materials and information are discoverable if they are "relevant to any party's claim or defense" or if they "appear[] reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1).

The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Knight*, 241 F.R.D. at 263. Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive, and thus should not

3

be permitted. *See Spiegelberg Mfg., Inc. v. Hancock*, 2007 WL 4258246, at *1 (N.D. Tex. Dec. 3, 2007); *Gauthier v. Union Pacific R.R. Co.*, 2008 WL 247016, at *3 (E.D. Tex. June 18, 2008); *see also* FED. R. CIV. P. 26(b)(2) (Courts must limit discovery if: (1) the discovery sought is shown to be unreasonably cumulative or duplicative, or is more easily obtainable from another, more convenient source; (2) the party seeking discovery has had ample opportunity to obtain the information sought; or (3) the burden or expense of the discovery outweighs its likely benefit.).

## III Analysis

### A. The Individual Defendants' Complete Personnel Files

Smith first takes issue with the following request and response:

**REQUEST FOR PRODUCTION NO. 9:** The complete personnel files of William Blanchard, George Parsley, Donald Hagan, and Laurence Bludau.

**OBJECTION:** Defendants object to this request on the grounds that it is overbroad, seeks documents that are not relevant to the claims and defenses at issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object on the grounds that the request invades the legitimate, privacy interests of the identified individuals.

According to Smith, "The rule on this issue is that, '[i]n an employment action, personnel files are discoverable when the personnel file sought is that of an employee directly involved with the incident that gave rise to the action.'" (Dkt. No. 15 at 13 (quoting *Vázquez-Fernández v. Cambridge Coll., Inc.*, 269 F.R.D. 150, 155 (D.P.R. 2010)).) Because an agreed protective order was previously entered in this case (Dkt. No. 14), Smith contends that the individual Defendants may produce their personnel files under that Order, thus alleviating any privacy concerns.

The individual Defendants claim that they have already produced all documentation from their personnel files relating to their references and background checks. Defendants' counsel has also represented to Smith that there are no disciplinary documents for the individual Defendants in their personnel files. Defendants further argue that the personnel files in question are not relevant in this action because Defendants did not "fire" Smith—she resigned—but even

4

assuming Smith was fired, she has failed to explain what she expects to find in the personnel files (that has not already been produced) that could possibly have relevance to her claims. Because the remaining documents are irrelevant, highly personal, and confidential, Defendants claim their production should not be compelled.

In a similar case out of the Northern District of Texas, the plaintiff moved to compel his former employer to produce the personnel files of a number of individuals involved in the decision to terminate his employment. *Beasley v. First American Real Estate Information Services, Inc.*, 2005 WL 1017818 (N.D. Tex. Apr. 27, 2005). Although the defendant employer agreed to produce "documents from their personnel files, to the extent they exist, pertaining to the reasons for plaintiff's termination and other complaints of race discrimination or retaliation," the plaintiff in *Beasley*, like Smith here, sought the individuals' "complete personnel files." *Id.* at *3. The court ruled as follows:

> To the extent any of the personnel files include information relating to the reasons for plaintiff's termination or other complaints of race discrimination or retaliation, they are clearly relevant and must be produced. However, plaintiff is not entitled to rummage through the personnel files of these employees in hopes of discovering information that might possibly be relevant to his claim. Therefore, defendant need only produce documents from the personnel files . . . pertaining to plaintiff's termination or other complaints of race discrimination or retaliation.

*Id.* at *4. Likewise, the court in *Norton v. Assisted Living Concepts, Inc.* denied the plaintiff's motion to compel the production of her supervisor's entire personnel file, "find[ing] that the resolution of th[e] case should turn on whether or not [the defendant employer] had a legitimate, non-discriminatory reason to terminate [Plaintiff's] employment and not on any job performance evaluations of [Plaintiff's supervisor], who participated in the decision to terminate [Plaintiff]." 786 F. Supp. 2d 1173, 1181 (E.D. Tex. 2011). *See also George v. Entergy Services, Inc.*, 2010 WL 3802452, at *4 (E.D. La. Sept. 17, 2010) (granting plaintiff's motion to compel similarly

5

situated employees' personnel files, and "not[ing], however, that plaintiff is not entitled to all of the information in the personnel files.")

The Court finds that any documents in Blanchard, Parsley, Hagan, and Bludau's personnel files pertaining to the following topics are relevant to this action: (1) the reasons for Smith's termination; (2) any complaints of sexual harassment or retaliation made by Smith or any other employee; (3) any discipline they have received in response to complaints of sexual harassment or retaliation made by Smith or any other employee, and (4) any complaints or discipline they have received for failure to properly investigate and/or respond to complaints of sexual harassment or retaliation made by Smith or any other employee. To the extent the individual Defendants' personnel files contain such information, Defendants are ordered to produce these documents, and Smith's motion to compel is **GRANTED**. To the extent Smith seeks the individual Defendants' complete personnel files, her motion to compel is **DENIED**.[1]

### B. Alleged Complaints of Sexual Harassment in the Security Department and DeTar's Response

Smith next takes issue with the following requests and responses:

**REQUEST FOR PRODUCTION NO. 40:** All documents identifying the complaints (including sexual harassment) made against John Wallace or his department. Please include the complainants' names, reason for complaint, person in charge of investigating such complaints, the outcome of the investigations, complainants' current employment status with Defendant, date of termination (if applicable), and reason for termination (if applicable).

---

1. The Court notes that its decision on this issue is not inconsistent with its opinion in *Ellison v. Patterson-UTI Drilling Co.*, Civil Action No. V-08-67, 2009 WL 3247193 (S.D. Tex., Sept. 23, 2009), upon which Smith relives heavily throughout her motion to compel. In *Ellison*, the plaintiff explained that he sought to compel the production of his alleged harassers' personnel files "in order to determine whether they had any discipline in the past for racial discrimination or received any discipline in response to Plaintiff's complaints, among other things, which pertains to Defendant's affirmative defense that it acted reasonably in preventing the discriminatory hostile work environment." (Pl. M. to Compel, Civil Action No. V-08-67, Dkt. No. 34.) Based on the plaintiff's identification of what information within the personnel files he considered relevant to his claim for hostile work environment, the Court ordered the defendant to respond "[t]o the extent Defendant ha[d] not produced *relevant information it possesse[d]*." *Ellison*, 2009 WL 3247193, at *9 (emphasis added).

**REQUEST FOR PRODUCTION NO. 41:** Any and all correspondence (including texts and emails) from William Blanchard directed to Kristina Elsik, instructing her not to intercede in any investigations of sexual harassment against John Wallace, and to permit John Wallace to handle those very investigations.

**REQUEST FOR PRODUCTION NO. 42:** All documents identifying the training and experience John Wallace has in handling investigations of employees' sexual harassment complaints, including past investigations. Please include the names of the persons against whom the complaints were made, the outcomes of the investigations, the complainants' current employment status with Defendant, the date of termination of complainants (if applicable), and reason for termination of complainants (if applicable).

**OBJECTIONS:** Defendants objected to all three requests on the grounds that they are overbroad as to time and subject matter, seek information that is not relevant to the claims and defenses at issue in this lawsuit, and are not reasonably calculated to lead to the discovery of admissible evidence, and/or invade the legitimate privacy interests of individuals who are not parties to this lawsuit.

Smith argues that because DeTar has raised an affirmative defense to punitive damages under *Kolstad v. Amer. Dental Ass'n.*, 527 U.S. 526 (1999),[2] how DeTar has responded to prior sexual harassment complaints is highly relevant. As such, Smith seeks information about complaints "relating to an alleged bastion of sexual harassment at DeTar, its Security Department, run by John Wallace." (*Id.*)

The Fifth Circuit has allowed the *Kolstad* defense in cases where the defendant "'had a well-publicized policy forbidding sexual harassment, gave training on sexual harassment to new employees, established a grievance procedure for sexual harassment complaints, and initiated an investigation *of the plaintiffs' complaints.*'" *Alaniz v. Zamora-Quezada*, 2005 WL 2179793, at *8 (S.D. Tex. Sept. 8, 2005) (quoting *Hatley v. Hilton Hotels Corp.*, 308 F.3d 473, 477 (5th Cir. 2002)) (emphasis added). As Defendants point out, the *Kolstad* defense says nothing about a defendant's response to sexual harassment complaints concerning other departments in which the

---

2. Under *Kolstad*, an employer is liable for punitive damages in a Title VII action if: (1) its agent is employed in a position of managerial capacity, (2) the agent acts within the scope of employment, and (3) the agent acts with malice or reckless indifference towards the federally protected rights *of the plaintiff. Kolstad*, 527 U.S. 526, 535—45. However, such liability may not be imputed if the agent's actions are contrary to the employer's good faith effort to comply with Title VII. *Id.* at 545.

7

plaintiff did not work, or against individuals about which the plaintiff did not complain. Smith relies on *Schmidt v. Medicalodges, Inc.*, 492 F. Supp. 2d 1302, 1312 (D. Kan. 2007) in support of her claim that sexual harassment allegations against Mr. Wallace are relevant to this action. However, the court in *Schmidt* considered whether the defendant employer took action in response to prior complaints of sexual harassment by the same individual who allegedly harassed the plaintiff. Here, although Smith's Second Amended Complaint alleges that Mr. Wallace repeatedly made a certain lesbian reference about Smith (Dkt. No. 20, ¶ 36), she does not allege that she ever complained about Mr. Wallace to Defendants, nor does she allege that Mr. Wallace sexually harassed her in this case.

Moreover, it is undisputed that Mr. Wallace worked in the security department, while Smith worked in the accounting department. Numerous federal courts have held that in employment discrimination cases, the scope of discovery should be limited to the same department or office where the plaintiff worked, and to the individuals alleged to have discriminated against the plaintiff. *See, e.g.*, *Sallis v. University of Minnesota*, 408 F.3d 470, 477—78 (8th Cir. 2005) (holding that the district court properly limited plaintiff's discovery request regarding prior discrimination complaints to complaints filed in plaintiff's specific department, where "his allegations of discrimination focus[ed] on the behavior of the supervisors there"); *Walker v. Prudential Property & Casualty Ins. Co.*, 286 F.3d 1270, 1280 (11th Cir. 2002) (finding that it was proper to deny plaintiff discovery about settlement agreements entered in other sex discrimination suits against employer because the agreements resolved claims against managers whose discriminatory animus was not at issue); *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978) ("[I]n the context of investigating an individual complaint the most natural focus is upon the source of the complained of discrimination[,] the employing unit or work unit."); *Zelaya v. Unicco Serv. Co.*, 682 F. Supp. 2d 28, 32 (D.D.C.

2010) ("In the absence of any evidence that there were hiring or firing practices and procedures applicable to all the employing units, discovery may be limited to the plaintiff's employing unit.") (quoting Owens v. Sprint, 221 F.R.D. 649, 654 (D. Ken 2004)); *Willingham v. Ashcroft*, 226 F.R.D. 57, 63 (D.D.C. 2005) (refusing to compel discovery of prior complaints of discrimination against individuals other than those alleged to have discriminated against plaintiff); *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 622 (S.D. Ind. 2002) (limiting plaintiff's discovery request regarding prior lawsuits and complaints of age discrimination to those involving the same direct supervisor plaintiff accused of wrongdoing); *Hill v. Motel 6*, 205 F.R.D. 490, 496 (S.D. Ohio 2001) (restricting Plaintiff's request for information regarding prior complaints and charges of age discrimination to complaints or charges within the area supervised by Plaintiff's supervisor who was responsible for her termination); *W. Dooley v. Recreation and Parks Com'n for Parish of East Baton Rouge (BREC)*, 2009 WL 1939022, at *4 (M.D. La. Jul. 6, 2009) ("A plaintiff's request for information about all discrimination actions filed against an employer 'sweeps too broadly,' and courts must establish 'reasonable boundaries on the type of discovery permissible by limiting the discovery to the relevant time period, to the particular type of discrimination alleged in the complaint, and to the divisions or departments where the plaintiff and his/her supervisors worked.") (internal citations and quotations omitted); *Averett v. Honda of Am. Mfg., Inc.*, 2009 WL 799638, at *2 (S.D. Ohio Mar. 24, 2009) ("[A] plaintiff's discovery is normally limited to the employer's conduct toward similarly situated employees who were supervised by the same supervisors alleged to have engaged in the unlawful discriminatory conduct."); *Saket v. Am. Airlines, Inc.*, 2003 WL 685385, at *3 (N.D. Ill. Feb. 28, 2003) (denying discovery of complaints about discrimination by employees beyond the plaintiff's work group and/or complaints involving the individuals he alleges discriminated against him); *Byers v. Illinois State Police*, 2002 WL 1264004, at *9 (N.D. Ill. June 3, 2002) ("Claims of discrimination

at other districts that do not implicate the named defendants are too remote from the allegations involved in this case to warrant discovery.").

Finally, Defendants have agreed to produce documents concerning any other complaints of sexual harassment made against Bludau, the individual Smith actually complained about in this case. Moreover, in Part III.A *supra*, the Court ordered Defendants to produce all documentation from the individual Defendants' personnel files related to: (1) any complaints of sexual harassment or retaliation made by Smith or any other employee; (2) any discipline they have received in response to complaints of sexual harassment or retaliation made by Smith or any other employee; and (3) any complaints or discipline they have received for failure to properly investigate and/or respond to complaints of sexual harassment or retaliation made by Smith or any other employee, which the Court finds relevant to Defendants' *Kolstad* defense.

For the foregoing reasons, the Court finds that any alleged complaints made against Mr. Wallace or his department by anyone other than Smith (RFP No. 40), correspondence from Blanchard to Kristina Elsik related to any investigations of sexual harassment against Mr. Wallace (RFP No. 41), and documents identifying the training and experience Mr. Wallace has in handling investigations of employees' sexual harassment complaints (RFP No. 42) are not relevant to this action. Accordingly, Smith's motion to compel is **DENIED.**

### C. Evidence Regarding Other Employees Who Left Work for Less than a Day

Smith next seeks to compel a response to the following request:

**INTERROGATORY NO. 5:** Identify all current and former employees of DeTar, including William Blanchard, George Parsely, Donald Hagan, and Laurence Bludau who William Blanchard, George Parsley, Donald Hagan, or Laurence Bludau knew left work for less than a full day, and state what action, if any, was taken against each such person.

**OBJECTION:** Defendants object to this interrogatory on the grounds that it is overbroad as to time and geographic location, seeks information that is not relevant to the claims and defenses at issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.

Smith argues that how DeTar treated other employees who left work for less than a day is highly relevant because, if they weren't all fired for "job abandonment" like Smith, then a fair inference would be that Defendants singled Smith out because of her recent sexual harassment complaint and/or FMLA protections.

The Court finds that Smith's request regarding information related to other employees who left work for less than a day is relevant and reasonably calculated to lead to the discovery of admissible evidence. *See, e.g., Carmona v. Southwest Airlines Co.*, 604 F.3d 848, 861—62 (5th Cir. 2010) (affirming jury verdict in a discrimination case where employees with worse attendance records than plaintiff's record were not fired, but plaintiff was). However, the Court finds Defendants' geographic location and time period objections to be meritorious. Accordingly, Smith's motion to compel a response to Interrogatory No. 5, is **GRANTED**, but it is limited to the same divisional office that made decisions regarding Smith's employment after April 19, 2005. To the extent the information has already been produced, the motion is **DENIED** as moot.

**D. Net Worth Information on the Individual Defendants**

Smith next seeks to compel a response to the following requests:[3]

**INTERROGATORY NO. 16:** Please state your approximate personal net worth as of April 19, 2010.

**INTERROGATORY NO. 17:** Please itemize all of your assets and liabilities of April 19, 2010.

**INTERROGATORY NO. 18:** Please describe the number, types of, and approximate value of all homes, real estate, automobiles, airplanes, boats, stocks, bonds, jewelry, club memberships, and electronic devices that you owned as of April 19, 2010.

**INTERROGATORY NO. 19:** What was your annualized salary as of April 19, 2010?

---

3. Smith propounded the same discovery requests on all four individual Defendants, although the numbers are not identical. The numbers used in this Order correspond to Smith's Interrogatories and Requests for Production to Defendant Bludau.

**INTERROGATORY NO. 20:** What were your total earnings from DeTar for 2009 and 2010?

**REQUEST FOR PRODUCTION NO. 25:** Your W-2(s) from 2009.

**REQUEST FOR PRODUCTION NO. 26:** Your W-2(s) from 2010, when available.

**REQUEST FOR PRODUCTION NO. 27:** All documents reflecting your personal net worth as of April 19, 2010.

**REQUEST FOR PRODUCTION NO. 28:** All documents reflecting the value of all homes, real estate, automobiles, airplanes, boats, stocks, bonds, jewelry, club memberships, and electronic devices that you owned as of April 19, 2010.

**REQUEST FOR PRODUCTION NO. 29:** Copies of any loan applications submitted by you, or on your behalf, in 2001 or 2010.

**REQUEST FOR PRODUCTION NO. 30:** Copies of all statements reflecting the value of any and all savings, checking, stock, bond, IRA, life insurance trusts, or other financial accounts you are the owner of (in whole or in part) from April 19, 2010 to the present.

**REQUEST FOR PRODUCTION NO. 32:** All financial statements from 2007 to present.

**OBJECTION:** Defendants objected to all of the above Interrogatories and Requests for Production on the grounds that they are overbroad, seek information that is not relevant to the claims and defenses at issue in this lawsuit, and are not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects on the grounds that the Interrogatories and Requests for Production are unduly burdensome and harassing.

Smith argues that because she has alleged a cause of action against each individual Defendant for defamation, which can give rise to punitive damages under Texas law, she is "entitled to all the net worth discovery she requested from them, which is substantial." (Dkt. No. 15 at 21 (citing Rogs. 16-20 and RFPs 21-26 to Parsley; Rogs. 16-21 and RFPs 21-28 to Blanchard; Rogs. 16-20 and RFPs 26-32 to Bludau; and Rogs. 16-20 and RFPs 21-28 to Hagan).)

Defendants argue that "[s]trong justification should exist before the individual Defendants are compelled to disclose the required information on their net worth." (Dkt. No. 22 at 14.) Because punitive damages against the individual Defendants are only available based on

Smith's claim for defamation, and "her evidence that this purported defamation actually occurred is far from compelling," Defendants ask that they not be required to disclose this information until after the Court rules on their forthcoming motion for summary judgment on Smith's defamation claim. (Dkt. No. 22 at 12.)

The Texas Supreme Court has held that a defendant's net worth is relevant in a suit involving exemplary damages. *Lunsford v. Morris*, 746 S.W.2d 471, 473 (Tex. 1988), *overruled on other grounds*, *Walker v. Packer*, 827 S.W.2d 833, 842 (Tex. 1992). "Therefore, in cases where punitive or exemplary damages may be awarded, parties may discover and offer evidence of a defendant's net worth." *In re Jacobs*, 300 S.W.3d 35, 40 (Tex. App.—Houston [14 Dist.] 2009) (citing *Lunsford*, 746 S.W.2d at 473). Likewise, district courts in this circuit have found that "evidence of net worth is relevant, discoverable, and admissible at trial to evaluate a plaintiff's punitive damage claim." *Wright v. Weaver*, 2009 WL 5170218, at *4 (E.D. Tex. Dec 18, 2009) (citing *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 137 (E.D. Tex. 2003)). *See also Ellison v. Patterson-UTI Drilling Co.*, 2009 WL 3247193, at *2 (S.D. Tex., Sept. 23, 2009) (compelling net worth discovery in employment discrimination case); *LeBlanc v. Bryan Imports, Inc.*, 2000 WL 628740, *4 (E.D. La. May 15, 2000) (under federal law, evidence of financial worth and ability to pay is admissible to evaluate the amount of punitive damages).

Despite Defendants' claims to the contrary, "[u]nder Texas law, a party seeking discovery of net-worth information need not satisfy any evidentiary prerequisite, such as making a *prima facie* showing of entitlement to punitive damages, before discovery of net worth is permitted." *In re Jacobs*, 300 S.W.3d at 40 (citing *In re House of Yahweh*, 266 S.W.3d 668, 673 (Tex. App.—Eastland 2008); *In re Garth*, 214 S.W.3d 190, 192 (Tex. App.—Beaumont 2007); *In re W. Star Trucks US, Inc.*, 112 S.W.3d 756, 763 (Tex. App.—Eastland 2003); *Al Parker*

13

*Buick Co. v. Touchy*, 788 S.W.2d 129, 131 (Tex.App.—Houston [1st Dist.] 1990)). *See also Lunsford*, 746 S.W.2d at 473 (rejecting requirement of *prima facie* showing because "[o]ur rules of civil procedure and evidence do not require similar practices before net worth may be discovered").

To the extent Defendants object to producing any information concerning their net worth, their objections are **OVERRULED**, and Plaintiff's motion to compel Defendants to respond to Interrogatory No. 16 is **GRANTED**. Plaintiffs' motion to compel Defendants to respond to RFP No. 27 is also **GRANTED**, but it is limited to each Defendant's most recent financial statement stating their current net worth. To the extent the information has already been produced, the motions are **DENIED** as moot.

The Court finds that Plaintiff's remaining discovery requests related to Defendants' net worth are overly burdensome, excessive, and unnecessary at this stage of the proceeding. Accordingly, Defendants' remaining objections are **SUSTAINED**, and Plaintiff's motion to compel Defendants to respond to Interrogatories 17, 18, 19, and 20, and RFPs 25, 26, 28, 29, 30, and 32 is **DENIED**. Should Plaintiff survive Defendants' motion for summary judgment on her defamation claim, the Court will readdress her discovery requests.

### IV. Conclusion

For the aforementioned reasons, Smith's Opposed Motion to Compel Discovery Responses from Defendants (Dkt. No. 15) is **GRANTED** in part and **DENIED** in part.

It is so **ORDERED**.

**SIGNED** this 14th day of December, 2011.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE